MORTIMER LAMPSON ET AL. v. THE MAYOR AND ALDER-
MEN OF JERSEY CITY, THE BOARD OF FINANCE OF
JERSEY CITY AND THE BOARD OF HEALTH OF. JER-
SEY CITY.

Argued June 12, 1905—Decided July 28, 1905.

Under the acts of April 3d, 1902 (*Pamph. L., p.* 549) ; April 7th, 1903
 (*Pamph. L., p.* 208), and March 29th, 1904 (*Pamph. L., p.* 343),
 and the facts disclosed in this case, the power of purchasing land
 and erecting and furnishing buildings for a new hospital in Jersey
 City is vested in the board of trustees appointed in accordance
 with said act of April 3d, 1902, and not in the board of health
 appointed in accordance with said act of March 29th, 1904.

On *certiorari.*

Before Justices DIXON and SWAYZE.

For the prosecutors, *George G. Tennant.*

For the defendants, *Robert Carey.*

The opinion of the court was delivered by

DIXON, J. This *certiorari* brings before the court the fol-
lowing resolutions, adopted by the board of finance of Jersey
City on May 3d, 1905:

"I. *Resolved,* That in the judgment of this board the build-
ings at present used for city hospital purposes in Jersey City
are inadequate, and this board does hereby determine that
new and additional hospital accommodations are required in
this city; and be it further

"II. *Resolved,* That in accordance with the provisions of
an act of the legislature of New Jersey known as chapter 125
of the laws of 1903, and entitled 'An act to authorize cities
in this state to construct hospital buildings and to purchase
land therefor,' approved April 7th, 1903, that this board issue
hospital bonds in the name of the mayor and aldermen of
Jersey City, signed by the mayor and city clerk of Jersey City,

and countersigned by the city comptroller, to the amount of $200,000, to be issued and sold to raise money to pay for the erection and construction of new and additional hospital buildings, and to purchase land necessary for the same; that said bonds shall be coupon bonds, in denominations of $1,000 each, and shall be dated July 1st, 1905, payable July 1st, 1935, in gold coin of the United States of America of the present standard of weight and fineness, and shall bear interest at the rate of four per cent. per annum, payable in like gold coin, and shall have coupons attached for every half year's interest, payable on the first days of July and January of each and every year until due, or may be registered at the option of the holder, and shall conform in all other respects to said act; and be it further

"III. *Resolved,* That a sinking fund be and the same is hereby created to pay off the principal of the $200,000 of said hospital bonds hereby authorized to be issued under said act of April 7th, 1903, by inserting in the tax levy each year two and one-half per cent. of the issue, said sum to be placed in said sinking fund and so invested as to be available for the payment of said hospital bonds when they shall become due; and be it further

"IV. *Resolved,* That the committee on finance of this board is hereby authorized to sell the said bonds at public or private sale at a price not less than par and accrued interest; and be it further

"V. *Resolved,* That the moneys received from the sale of said bonds shall be placed to the credit of the board of health of Jersey City, to be applied and used for the purpose of erecting and constructing the said new and additional hospital buildings and to purchase land for the same."

The validity of these resolutions is attacked on two grounds —*first,* that the act of 1903 therein referred to is unconstitutional; and *second,* that the board of health mentioned in the last resolution had no power to purchase land and erect the hospital.

The brief presented on behalf of the prosecutor suggests no

reason for adjudging the act of 1903 to be unconstitutional, and we have discovered none. It must be regarded as valid.

The second ground alleged calls for the consideration of three statutes: "An act to authorize cities of the first class of this state to purchase land and to erect hospital buildings thereon, and to issue and sell bonds to pay for the same, and to create a board of officials to have charge of the same," approved April 3d, 1902; "An act to authorize cities in this state to construct hospital buildings and to purchase land therefor," approved April 7th, 1903; and "An act authorizing the appointment of boards of health in cities of the first class and defining their powers and duties," approved March 29th, 1904.

The act of 1902 provides that whenever in any city of the first class the municipal body having charge of the finances determines that the buildings and property devoted to the use of a city hospital are inadequate, it shall take measures for issuing bonds to an amount not exceeding $300,000 for the purpose of purchasing lands and erecting and furnishing a new hospital, and that whenever the issuing of such bonds shall have been directed the mayor of the city shall appoint a board of trustees, to whose credit the money arising from the sale of the bonds shall be placed and who shall have charge of the purchase of land and the erection and furnishing of the new hospital. The act further provides that the board of trustees shall have general charge and control, not only of the new hospital when erected, but of all the city hospitals, from the time of its appointment, and shall be vested with and perform all the powers and duties relating to the management of city hospitals then vested in or performed by any municipal board or body in the city.

The act of 1903 provides that whenever in any city the body having charge of the finances determines that new hospital accommodations are required, it shall take measures for issuing bonds to an amount not exceeding three mills on each dollar of the value of the property last assessed in the city, and the money arising from the sale of such bonds shall be placed to the credit of "the board, body or authority in

which is vested by law the control of hospitals in such city," and that board, body or authority shall expend the same in purchasing land and erecting and furnishing a new hospital.

The act of 1904 provides for the creation of a board of health in each city of the first class, and authorizes such board to have charge of, control, manage and operate the public hospitals and dispensaries of the city, and to exercise all the powers previously vested in the local board of health. The seventh section, after repealing inconsistent acts, adds: "But nothing herein contained shall repeal or alter the provisions of an act entitled 'An act to authorize cities in this state to construct hospital buildings and to purchase lands therefor,' approved April seventh, one thousand nine hundred and three, but said act shall remain in full force and effect until the construction and furnishing of the hospital buildings therein provided for shall have been completed by the body now authorized by said act to complete the same."

The facts to which these statutes are to be applied are that prior to the act of 1902 control of the public hospital in Jersey City was legally vested in and exercised by the police commissioners of the city; that on June 4th, 1902, the city board of finance, in accordance with the act of 1902, directed bonds to the amount of $300,000 to be issued for the acquisition of a new city hospital, and thereupon the mayor, on July 15th, 1902, appointed a board of trustees in pursuance of said act, which at once organized and took various steps looking towards the purchase of land and the erection of a new hospital; this board still exists, but has never assumed charge of the existing city hospital; that on August 15th, 1903, the board of finance adopted resolutions, under the act of 1903, for the sale of bonds to the amount of $200,000; that under the act of 1904 a board of health was appointed for the city, which, since June 1st, 1904, has had charge and control of the existing hospital; and that the board of finance did not carry out the resolutions of June 4th, 1902, and August 15th, 1903, but in February, 1905, voted to rescind the same.

Considering these statutes and facts in their chronological

order, with the view of ascertaining the intention of the legislature at each step, the following propositions seem to us to be reasonably maintained.

When the board of hospital trustees was appointed, in July, 1902, the purpose of the legislature, as expressed in the act of 1902, would, if fully executed, have vested in that board the control of all city hospitals, both those to be erected and that then in existence. Whether this purpose, so far as it related to the existing hospital, had been constitutionally expressed may be doubted, because of the limited terms used in the title of the act, but the purpose itself is manifest and must have been regarded by the legislature as declared in legal form.

When in the act of 1903 the legislature extended to all cities the power of building new hospitals, and provided that their erection in each city should be committed to that body in which was vested the control of the public hospital, it should be assumed that the legislature bore in mind the act of 1902 on the same subject-matter and its import to the effect that whenever a new hospital was to be built in a city of the first class a board of trustees specially appointed for that purpose was to be vested with the control of all city hospitals and have charge of the new enterprise. Even if the purpose expressed in the act of 1902 to vest in such board the control of existing hospitals had failed, that does not preclude the inference that the legislature believed it to be the law, and under such belief intended to designate that board by the descriptive words used in the act of 1903. The act of 1903 contains no repealing words whatever, and while of course it supersedes the act of 1902 so far as there is inconsistency between them, the intention of the lawmakers relating to the building of new hospitals in cities of the first class can be best ascertained by reading and construing them together as if both were valid. The intention thus ascertained was, we think, that the board of hospital trustees in such cities should have charge of the purchase of land and the erection of buildings for a new hospital, and that intention clearly, declared in the act of 1902, remained as the law under the act of 1903.

The act of 1904 did not change this legal situation. It makes no reference to the subject of building new hospitals. Its scope, as we interpret it, was to withdraw from the board of trustees and all other boards in cities of the first class the management and control of city hospitals, whether then existing or thereafter erected, and vest the same in the new board of health, but not to interfere with the powers delegated for the construction of new hospitals. When the act of 1904 was passed the board of trustees in Jersey City had already been organized, and was proceeding with its duty of acquiring a new hospital pursuant to the resolutions of the board of finance, and the evident purpose of the exception contained in the repealing clause of the act was that the board should carry on the project to completion.

The vote of the board of finance, passed in February, 1905, for the rescission of its previous resolutions, on the basis of which a new and independent municipal board had been lawfully created, could not impair the powers of the trustees delegated to them by a valid statute.

On the whole case, our conclusion is that the board of health is not empowered to purchase land and erect and furnish buildings for a new hospital in Jersey City; that such power is vested in the board of hospital trustees, and consequently the fifth resolution, passed on May 3d, 1905, is illegal.

This resolution is quite distinct from the others passed at the same time, and we are not prepared to infer that the board of finance would not have adopted the other resolutions unless the duty of expending the funds provided for was to be committed to the board of health. It seems more reasonable to suppose that the board desired to meet the public need for a new hospital, even though the aim was to be accomplished through some other instrumentality than that named by the board. Our present order, therefore, is that only the fifth resolution be set aside, and that the others stand unless counsel desire to be heard on the question of severability.